UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGER CENTURY AIRCRAFT,<br><br>             Plaintiff,<br><br>     v.<br><br>CALSPAN CORPORATION, a New York corporation,<br><br>             Defendant. | 1:09-cv-0317 OWW GSA<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

On April 24, 2009, the parties' counsel appeared for oral argument on Plaintiff and Counterclaim Defendant Tiger Century Aircraft's ("TCA") Motion for a Preliminary Injunction.  TCA requested a preliminary injunction preventing Defendant and Counterclaim Plaintiff Calspan Corporation ("Calspan") from purchasing certain F-5 aircraft from the Government of Norway.  The motion was fully briefed by the parties and submitted to this Court for decision.

This case arises out of two agreements between the parties: (a Reciprocal Non-Disclosure Agreement ("RNDA"), which the parties executed on February 29, 2008, and a Contingent Purchase Agreement ("CPA"), which the parties executed on June 5, 2008.

1

The present motion, however, deals exclusively with the RNDA and TCA's related allegations of breach by Calspan.  The essential allegations are that Calspan breached the RNDA by independently contacting the Government of Norway, which was purportedly protected as TCA's source under the RNDA.

## FINDINGS OF FACT

1. TCA is a Nevada corporation with its principal place of business in Mojave, California.  TCA's principal is Andrew Skow.

2. TCA and Mr. Skow are expert in aeronautical engineering.  Mr. Skow has experience with Northrup Aviation, as well as command responsibility in the design and ultimate construction of F-5 aircraft.

3. As a result of this experience, Mr. Skow has special knowledge about aircraft that includes aircraft performance capabilities, configuration differences, and structural condition differences.  Mr. Skow also has knowledge about countries that have excess F-5s for sale and knows of shipment options to transport the aircraft to the United States.

4. Calspan is a New York corporation with its principal place of business in Buffalo, New York.  Calspan's President is Louis H. Knotts.

5. Calspan is in the business of providing flight services, as well as acquiring and providing military aircraft for customers, and providing special training, skill, and expertise about aircraft operations.

6. On February 29, 2008, the parties executed the RNDA.

7. The RNDA provides for the sharing on a confidential

basis of certain information that relates to the sale, use, acquisition, and operation of F-5 aircraft.  Therefore, the RNDA includes terms and conditions for the protection of proprietary information.

8. Either party could be a disclosing party under the RNDA.

9. Information that was disclosed in writing or in another tangible form would be considered proprietary if it was clearly marked proprietary or confidential, or bore a marking of like import.

10. Information that was disclosed orally or visually would be considered proprietary only if it was identified as proprietary at the time of disclosure and, within ten business days of disclosure, the disclosing party confirmed in writing delivered to the receiving party the proprietary nature of such information.

11. These non-disclosure provisions of the RNDA were not performed in this case.  There was no identification of information as proprietary and no designation pursuant to the terms of the RNDA.

12. The RNDA also excludes non-proprietary information from the scope of its non-disclosure obligations on various grounds, several of which are inapplicable.

13. Aside from the protection of proprietary information from disclosure, the RNDA contains a non-circumvention provision in paragraph seven, which states that Calspan agrees "not to independently approach TCA's source of F-5 aircraft during the period of this agreement."

14. The RNDA further includes a termination provision under which either party could terminate the agreement by providing written notice to the other and states that "the provisions concerning non-disclosure of proprietary information received under this agreement shall survive the expiration or termination of this agreement."

## CONCLUSIONS OF LAW

15. This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is more than $75,000, exclusive of interest and costs.

16. The RNDA was to be performed in part in the Eastern District of California, and the Eastern District of California is an appropriate venue for the trial of this action.

17. The federal standard for the issuance of a preliminary injunction applies in this case as recently adopted by the Ninth Circuit: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1045, 1052 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008)).

### Likelihood of Success on the Merits

18. There is a total conflict in the evidence on the most

material terms of the RNDA and at this time there are issues regarding credibility, the availability and source of information that remain unknown to the Court.

19.  There are disputed issues of fact and credibility that cannot be resolved on this motion with respect to the non-circumvention provision in the RNDA.  Specifically, there is a conflict in the evidence as to the meaning of the term "TCA's source" and whether Norway can be considered "TCA's source."

20.  There are disputed issues of fact regarding the legal effect of the RNDA's termination and survival provisions that cannot be resolved without discovery and further evidence.

21.  Based on these substantial evidentiary conflicts concerning the RNDA, the Court holds that TCA has not established the requisite likelihood of success on the merits.

Irreparable Harm and Balance of Equities

22.  The parties dispute the status quo as of the time this motion for injunctive relief was initiated.  The evidence established that TCA does not currently have any enforceable agreement in effect with Norway.

23.  Calspan has a contract with Norway for aircraft.  Its potential damage in the event of an injunction would be its inability to fulfill its contract with Norway and the resulting reputational harm in the industry.

24.  If enjoined, Calspan would lose its ability to deal with Norway going forward, and the subject aircraft would be gone.  Calspan would suffer irreparable harm.

25.  TCA's potential harm in the absence of an injunction is

5

its inability to benefit from the sale of Norway aircraft to Calspan or to benefit from Calspan's prospective contract to sell the aircraft to another purchaser.  That prospective contract is not properly before the Court for consideration.

26.  TCA's harm, if any, is monetary rather than equitable although TCA claims its reputation will also be harmed.  If TCA is ultimately vindicated by prevailing in this litigation, its reputation will be vindicated.  TCA's showing of irreparable harm is insufficient to justify injunctive relief.

27.  The balance of equities favors Calspan.

Public Interest

28.  The public interest is not directly implicated in this private party dispute over private contract and business rights, and is best served by decision on the merits after trial, without the granting of injunctive relief on this record.

CONCLUSION

For the foregoing reasons and those stated in the Court's April 24, 2009 oral decision, incorporated by this reference, and based on these Findings of Fact and Conclusions of Law that TCA has not satisfied the standard for the issuance of a preliminary injunction under prevailing Ninth Circuit law, TCA's Motion for a Preliminary Injunction is DENIED.

IT IS SO ORDERED.

Dated:   October 23, 2009                /s/ Oliver W. Wanger
                                         UNITED STATES DISTRICT JUDGE